IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JONARD P. ESCALANTE,<br><br>             Plaintiff,<br><br>   vs.<br><br>CITY AND COUNTY OF HONOLULU, et al.,<br><br>            Defendants. | CIV. NO. 17-00578 JMS-RLP<br><br>ORDER GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS COUNT THREE, WITHOUT LEAVE TO AMEND, ECF NO. 11 |

**ORDER GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS COUNT THREE, WITHOUT LEAVE TO AMEND, ECF NO. 11**

**I. INTRODUCTION**

The question before the court is whether Plaintiff Jonard P. Escalante ("Escalante") has stated a viable 42 U.S.C. § 1983 claim against Defendant the City and County of Honolulu (the "City") for the assault he suffered at the hands of an off-duty Honolulu Police Department ("HPD") Officer, Co-Defendant Keoki Kamuela Duarte ("Duarte"). Because the court finds no plausible causal connection between the assault and the alleged acts or omissions of the City, the Motion to Dismiss is GRANTED.

///

///

## II. BACKGROUND

### A. Factual Background

The facts alleged regarding the underlying assault are straightforward. On December 7, 2015, Escalante and Duarte were involved in a minor traffic accident. Compl. ¶¶ 11-13, ECF No. 1. Both drivers pulled to the side of the road, whereupon Duarte pulled Escalante from his truck, threw him to the asphalt, and punched, kicked, and choked him until a third party intervened. *Id*. ¶¶ 14-16. Duarte was not on duty at the time, and he was not driving a patrol car. *Id*. ¶ 12. There are no allegations that Escalante knew or believed that Duarte was a police officer or that Duarte did, said, or wore anything implying his position. Duarte was later convicted of assault and unauthorized entry of a motor vehicle. *Id*. ¶ 17.

The factual allegations in the Complaint regarding the City, however, are more complex. They center on an alleged "*de facto* policy, practice, or custom of abstaining from reporting instances of misconduct of other officers" — what Escalante calls in his Opposition "HPD's unofficial 'brotherhood' culture of silence" — which he alleges is "continuing, persistent, and widespread throughout the [HPD]" and results in the City's "failure to discover and/or take appropriate remedial actions." *Id*. ¶¶ 21-22, 25-33; Opp'n at 3, ECF No. 19. The Complaint further alleges that HPD encourages its officers' behavior by failing to combat it,

including by failing to establish appropriate policies and procedures for doing so. *See id.* ¶¶ 21-22, 25-27.

Specifically, the Complaint states that, before the December 7 assault, Duarte "had a history of emotional distress and/or anger management issues resulting in the inappropriate use of excessive and violent force which was or should have been known" to HPD. Compl. ¶ 19. It claims that the City failed to properly counsel Duarte or "limit his encounters with potential victims of excessive force and violence," *id.* ¶20; failed to investigate incidents involving Duarte and properly discipline him, including for a 2012 incident involving a "mistaken arrest," violence, and excessive force, and an attempt to cover up the same, *id.* ¶ 20, 26; and failed to take proper action after the December 7 assault, *id.* ¶ 24.

Besides the 2012 incident, the Complaint refers generally to four other "attempt[s] to conceal misconduct or criminal wrongdoing" of *other* HPD officers (one incident occurring in 2009-2010, two in 2014, and one in 2015).[1] *Id.* ¶ 27. And finally, it alleges that the City failed to adopt policies (1) requiring officers to report the misconduct of other officers, (2) protecting those who do report, and

---

[1] In his Opposition, however, Escalante withdraws his reliance on one of the 2014 incidents, stating that he discovered after filing the Complaint "that a Hawaii state grand jury . . . declined to issue an indictment" against the individual involved. Opp'n at 4 n.3.

3

(3) requiring records be kept of misconduct and consequences.[2]  *Id.* ¶¶ 28-29, 31.

## B. Procedural Background

Escalante filed his Complaint on December 1, 2017, alleging various claims against the City, Duarte, and other unnamed individuals. ECF No. 1. Against the City, he alleges in Count Three a violation of 42 U.S.C. § 1983 and in Count Six a state-law negligence claim. *Id.* at 15-18.

The City filed its Motion to Dismiss on January 2, 2018, arguing that Counts Three and Six of the Compliant should be dismissed for failure to state a claim upon which relief can be granted.[3] ECF No. 11. Escalante filed his Opposition on March 19, 2018.[4] ECF No. 19. And the City replied on March 26, 2018. ECF No. 21. The Motion was heard on April 9, 2018.

---

[2] The Complaint also alleges that the City failed to "provide its supervising officers with the proper training and supervisory tools . . . to identify concerning behavioral patterns and prevent officer misconduct from developing, occurring, or persisting." *Id.* ¶ 30. But this allegation has been withdrawn. *See* Opp'n at 4 n.2.

[3] The Motion is brought only as to the claims against the City. As explained below, however, Escalante has agreed to the dismissal of his § 1983 claims against Duarte. Given the court's ruling on Count Three, it declines jurisdiction of the supplemental state-law claims and does not address the Motion as to Count Six.

[4] The Opposition attaches various exhibits that are not part of the Complaint. The court elects not to convert the City's Motion to one for summary judgment and strikes these exhibits. *See* Fed. R. Civ. P. 12(b)(6). ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to *and not excluded by the court*, the motion must be treated as one for summary judgment under Rule 56.") (emphasis added); *see also Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007) ("Federal Rule of Civil Procedure 12(b)(6) specifically gives courts the discretion to accept and consider extrinsic materials offered

(Continued . . .)

# III. **STANDARD OF REVIEW**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy the requirements of Federal Rule of Civil Procedure Rule 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."

This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And a pleading that offers "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* In other words, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* (citations and quotations omitted).

---

(. . . continued)
in connection with these motions, and to convert the motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings.").

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Iqbal*, 556 U.S. at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 558-59. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679.

///

///

///

///

## IV. **DISCUSSION**

### A. *Monell* Liability under § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Although municipalities and other local government units are "persons to whom § 1983 applies," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipality can only be liable "for its own" constitutional violations. *City of Okla. City v. Tuttle*, 471 U.S. 808, 818 (1985) (quoting *Monell*, 436 U.S. at 683). That is, § 1983 does not impose liability on municipalities for constitutional violations committed by its employees under the theory of respondeat superior. *Id*.

Rather, "*Monell* teaches that [a municipality] may only be held accountable if the deprivation was the result of municipal 'custom or policy.'" *Id.* at 817. "[T]he constitutional violation must be caused by 'a policy, practice, or custom of the entity,' or be the result of an order by a policy-making officer." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (citations omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration,

frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).

> In other words,
>
> Local governing bodies *can* be held liable . . . where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where the action is made "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels."

*Jackson v. Barnes*, 749 F.3d 755, 762-63 (9th Cir. 2014) (quoting *Monell*, 436 U.S. at 690-91). "An official municipal policy . . .'includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.'" *Tsao*, 698 F.3d at 1144 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Moreover, "a local government body can be held liable under § 1983 for policies of inaction as well as policies of action." *Jackson*, 749 F.3d at 763. "[A] policy of inaction is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.'" *Id.* (quoting *Tsao*, 698 F.3d at 1143).

8

To state a claim based the "inaction" theory, a plaintiff must show that the policy amounts to "deliberate indifference to the plaintiff's constitutional right." *Id.* (quoting *Tsao*, 698 F.3d at 1143). "This requires showing that the defendant 'was on actual or constructive notice that its omission would likely result in a constitutional violation.'" *Id.* (quoting *Tsao*, 698 F.3d at 1145). Under this theory, a plaintiff must also show that "these policies were the moving force behind the employee's violation of [Plaintiff's] constitutional rights, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016); *see Oviatt v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992) (same) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

First, the City contends that Escalante has not plausibly alleged that Duarte was acting under color of state law. Mot. at 6-8. The Complaint clearly states that Duarte was off-duty at the time of the assault, and it includes no allegations whatsoever that he used, attempted to use, or pretended to use his status as a police officer — let alone that any such action influenced Escalante or any witness. *See Anderson v. Warner*, 451 F.3d 1063, 1068-69 (9th Cir. 2006) (holding that to have acted under color of law a defendant must have "pretended to

9

act in the performance of his official duties . . . with the purpose and effect of influencing the behavior of others," and the actions must have meaningfully related to his governmental status or official duties). And in fact, at the April 9 hearing, Escalante conceded that Duarte was not acting under color of law.

Escalante contends, however, that his claim may proceed nonetheless under *Monell* based on his allegation that the "City, by and through HPD's final policymaker (the Chief of Police), is responsible for *causing* [Escalante] to be subjected to an unlawful assault." Opp'n at 11.

The Ninth Circuit first addressed this argument in *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (acknowledging the novelty of plaintiff's argument that county could be held liable under *Monell* for an off-duty officer's private actions — whether or not taken under color of state law — so long as those actions were caused by the county's policies and procedures). There, during an apparently legal but fruitless narcotics search of the plaintiffs' home, a San Diego County Sheriff's deputy learned that the plaintiffs kept cash and jewelry in a safe. *Id*. at 833. He returned to the home weeks after the search, when he was off duty, and robbed and assaulted the residents. *Id*. at 833-34. The plaintiffs brought a § 1983 claim premised on *Monell*, contending that the Sheriff's Department's policies and procedures caused the plaintiffs' injuries. *Id*. at 835-36.

10

In considering the plaintiffs' claim, the court first stated that "[i]f a government officer does not act within the scope of employment or under color of state law, then that government officer acts as a private citizen." *Id*. at 835 (citing *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) (finding that "acts of state officials in the ambit of their personal pursuits are not state action")). And one does not have a "constitutional right" to be free from deprivations — even of constitutional rights — by private citizens. *Id*. at 836. Nor, absent narrow exceptions,[5] does one have a "constitutional right 'to governmental aid [from private deprivations of constitutional rights] even where such aid may be necessary to secure life, liberty, or property.'" *Id*. (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (alterations in *Van Ort*)). The court acknowledged the "possible interaction between the identification of state action and causation," stating that "although state action and causation are separate

---

[5] "There are two exceptions to the general rule that 'a State's failure to protect an individual against private violence . . . does not constitute a violation of the Due Process Clause." *Huffman v. Cty. of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998) (quoting *Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). The first is when the government has a special relationship with the individual (usually when the individual is in government custody). *See id*. at 1058-59. And the second is the state-created danger doctrine under which liability "exists where the state affirmatively places the plaintiff in a dangerous situation." *Id*. at 1059. Escalante has not argued that either exception applies here, nor could he under the facts as alleged.

11

concepts, elements of the causation analysis have been used in determining state action." *Id*. (internal citation omitted).

But it resolved the case on causation grounds. It emphasized that "[t]he requisite *causal connection* can be established not only by some kind of direct personal participation in the deprivation but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id*. (quoting *Bateson v. Geisse*, 857 F.2d 1300, 1304 (9th Cir. 1988)). It held that a plaintiff must show a "municipal policy [of] action or inaction" was the proximate cause (not merely a but-for cause) of the § 1983 injury: "[w]ithout proximate cause, there is no section 1983 liability." *Id*. at 837. Because the court found as a matter of law that the county could not have foreseen its deputy's actions and specifically "could not reasonably have foreseen that [the deputy] would become a free-lance criminal and attack the [plaintiffs] as he did," it affirmed judgment for the county. *Id*. The court concluded: "Thus, whether we need to borrow elements of proximate cause analysis to determine the state action issue under *Bateson* is irrelevant. The [plaintiffs] failed to prove causation." *Id*.

Following *Van Ort*, the Ninth Circuit has resolved other cases involving off-duty officers in a similar fashion. *See Snyder v. City &*

*Cty. of San Francisco*, 288 F. App'x 346, 347-48 (9th Cir. 2008) (affirming summary judgment for defendant based on insufficient evidence of causation on claim that it was liable under *Monell* for assault by off-duty officer); *see also Huffman v. Cty. of Los Angeles*, 147 F.3d 1054, 1061 (9th Cir. 1998) (applying state-created danger doctrine, and finding district court had erred by denying County's motion for judgment as a matter of law when shooting by off-duty officer neither occurred under color of law nor was "foreseeable by the County.").[6]

And, in a case involving an on-duty sheriff's deputy, the Ninth Circuit recognized the implausibility of a claim that assault (in that case a sexual assault) was caused by a failure to train. *See Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1156 (9th Cir. 2014). There, in affirming the dismissal of the plaintiff's *Monell* claim, the court stated: "[g]iven that the penal code prohibits sexual battery, it is

---

[6] Other courts have held, as a matter of law, that the acts of an employee not acting under color of law can never support a *Monell* claim. *See, e.g., Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) ("Because [Plaintiff] has alleged no constitutional injury attributable to the [off-duty] Officers, [Plaintiff] has failed to state a claim that a City policy was the moving force behind a violation of his constitutional rights."); *Roe v. Humke*, 128 F.3d 1213, 1218 (8th Cir. 1997) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.")); *Claudio v. Sawyer*, 409 F. App'x 464, 466 (2nd Cir. 2011) (holding that plaintiff's failure to sufficiently allege off-duty officer had shot plaintiff's decedent while acting under color of state law "doomed plaintiffs' *Monell* claim . . . as such a claim must be based on an independent constitutional violation by a state actor"); *Fate v. Harper*, 558 F. App'x 250, 253 (3d Cir. 2014) ("We find no error in the District Court's instruction requiring the jury to find that Detective . . . acted under color of law before imposing liability against the City.").

13

not plausible that inclusion in the [County's] Manual of the language that [Plaintiff] proposes would have prevented the assault on [her.]" *Id*. at 1160.

Escalante's claim that HPD's alleged practices *caused* the assault in this case (or that stricter reporting and discipline policies would have prevented it) is equally implausible. *Cf. Hyun Ju Park v. City & Cty. of Honolulu*, 2018 WL 832839, at *9-10 (D. Haw. Feb. 12, 2018) (finding plaintiff had not plausibly alleged HPD's "'brotherhood' culture of silence" was the "moving force" behind plaintiff's injury from accidental shooting by off-duty officer at bar). Escalante has merely alleged in conclusory fashion that, based upon Duarte's "previous conduct and actions . . . it was a foreseeable consequence that absent corrective action and the existence and implementation of appropriate policies and procedures [Duarte] would cause serious bodily injury to others and/or use excessive force and violence if his employment as a police officer was permitted to continue, and his suffering from emotional and/or anger management issues remained unaddressed." Compl. ¶ 23. Even assuming, as the court must at this motion-to-dismiss stage, the truth of Escalante's factual allegations regarding HPD's practices of lax discipline and inadequate policies about reporting officer misconduct, he has not alleged such a plausible link. With no plausible causal connection, the Complaint is — in

essence — an attempt to impose respondeat-superior liability for Duarte's private actions, something not allowed under *Monell*.[7]

Nor does the Complaint contain plausible allegations that the City acted with deliberate indifference. Like causation, deliberate indifference involves an element of foreseeability. *See Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008) (describing deliberate indifference as a "'conscious' or 'deliberate' choice by the [municipality] to risk a 'likely' violation of constitutional rights"). Even assuming the truth of Escalante's factual allegations, he has not plausibly alleged the City's deliberate indifference because he has not plausibly alleged that an assault such as that which occurred here was foreseeable. *Cf. Flores*, 758 F.3d at 1160 (finding "no basis from which to conclude that the unconstitutional consequences of failing to train police officers not to commit sexual assault are so patently obvious that the County . . . [was] deliberately indifferent").

Accordingly, the City's Motion is GRANTED as to Escalante's § 1983 claim.

---

[7] Likewise, although Escalante does not rely on these allegations in his Opposition, the same is true regarding his allegations about Duarte's mental state. Escalante alleges that Duarte was "suffering from emotional distress and/or anger management problems related to his employment" and that the City "did nothing to provide [Duarte] with counseling." Compl. ¶¶ 18, 20. But even assuming both of these allegations are true, no facts in the Complaint create a plausible link between the City's inaction and the assault such that the former could be considered the proximate cause of the latter.

**B.     Supplemental Jurisdiction Over State-Law Claims**

"[D]istrict courts may decline to exercise supplemental jurisdiction over [state-law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  And "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point towards declining to exercise jurisdiction over the remaining state-law claims."  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quotation marks and citation omitted).

At the hearing, the court offered Escalante leave to amend his Complaint, but Escalante declined and expressed his preference to pursue his claims in state court.  He also agreed to the dismissal of his federal claims against Defendant Duarte.  *See* ECF No. 25.  Thus, because no federal claim remains and the Complaint fails to allege any basis for diversity jurisdiction, the court declines jurisdiction over it and the remaining state-law claims and does not address the

16

City's Motion as to Count Six.

## V.  CONCLUSION

For the reasons stated above, the City's Motion to Dismiss is GRANTED as to Count Three without leave to amend, and the court declines jurisdiction of the remaining state-law claims contained in the Complaint.[8]  The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 11, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Escalante v. City & Cty. of Honolulu*, Civ. No. 17-00578 JMS-RLP, Order Granting Motion to Dismiss Count Three, Without Leave to Amend, ECF No. 11.

---

[8] "The period of limitations for any [state] claim [joined with a claim within federal-court competence] shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 598 (2018) (quoting 28 U.S.C. § 1367(d) and interpreting "the word 'tolled' . . . [to] mean the state limitations period is suspended during the pendency of the federal suit," as opposed to meaning that a 30-day "grace period" is granted) (alterations in *Artis*).